# EXHIBIT 1

Electronically Filed - Jackson - Kansas City - January 28, 2019 - 04:56 PM

IN THE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI
AT KANSAS CITY

| | | |
|---|---|---|
| ROSEMARY A. SALERNO, | ) | |
| 6704 North Charleston Drive | ) | |
| Kansas City, Missouri 64119 | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. _____ |
| | ) | |
| MPI MANAGEMENT, LLC d/b/a | ) | Division _____ |
| OLSHAN PROPERTIES, | ) | |
| **Serve Registered Agent:** | ) | |
| Missouri Secretary of State | ) | |
| 600 West Main | ) | |
| Jefferson City, Missouri 65102 | ) | |
| | ) | |
| and | ) | |
| | ) | |
| ZONA ROSA TOWN CENTER, LLC, | ) | |
| **Serve Registered Agent:** | ) | |
| Missouri Secretary of State | ) | |
| 600 West Main | ) | |
| Jefferson City, Missouri 65102 | ) | |
| | ) | |
| Defendants. | ) | |

**PETITION FOR DAMAGES**
**(Case Type Code: TJ and TI)**

COMES NOW Plaintiff Rosemary A. Salerno, by and through counsel, and for her

Petition against Defendants MPI Management, LLC d/b/a Olshan Properties and Zona Rosa

Town Center, LLC for employment discrimination and retaliation in violation of the Missouri

Human Rights Act (hereafter "MHRA"), Rev. Stat. Mo. § 213.010, *et seq.*, and in violation of

the Missouri Whistleblower Protection Act, Rev. Stat. Mo. § 285.575, *et seq.*, states and alleges

as follows:

## PARTIES

1.      Plaintiff Rosemary A. Salerno is an individual residing in the State of Missouri, at 6704 North Charleston Drive in Kansas City, Missouri 64119.  Plaintiff was employed by Defendants as the General Manager of Zona Rosa Town Center at the time she was wrongfully terminated on or about February 5, 2018.

2.      Defendant MPI Management, LLC d/b/a Olshan Properties ("Olshan Properties") is a for-profit Delaware corporation doing business in Missouri.

3.      Defendant Zona Rosa Town Center, LLC ("Zona Rosa") is a for-profit Delaware corporation doing business in Missouri, and with its principal place of business in Kansas City, Missouri.

4.      At all times herein mentioned, Plaintiff was a person, an individual, and an employee within the meaning of the MHRA and the Whistleblower Protection Act ("WPA") and was therefore and otherwise entitled to all the benefits and protections of the MHRA, WPA, and of the common law of the State of Missouri.

5.      At all relevant times Defendants individually and/or jointly were employer(s) within the meaning of the MHRA and WPA because they employed six or more persons for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, and thus Defendants are liable to Plaintiff under the MHRA and otherwise according to statutory and common law. MO. REV. STAT. §§ 213.010(7); 285.575.

6.      Plaintiff's direct supervisor was the Executive Director of Property Management for Olshan Properties and Plaintiff received her paychecks from MPI Management, LLC.

## Jurisdiction and Venue

7.      This Court has personal jurisdiction over Defendants because the Defendants are

2

doing business in the State of Missouri, where Defendants have sufficient minimum contacts with Missouri to confer jurisdiction on this Court.

8.      Venue is proper in this Court pursuant to RSMo. § 213.111.1 because Defendants engaged in unlawful discriminatory and retaliatory practices in Jackson County, Missouri.

**Background Facts and Exhaustion of Administrative Remedies**

9.      Plaintiff was employed by the Defendants beginning in or about 2004 as General Manager of Zona Rosa Town Center until her wrongful termination on or about February 5, 2018.

10.     Throughout her employment with Defendants, Plaintiff met all qualifications of her position, performed all duties of her job as required, met or exceeded the expectations of her position, won numerous industry awards, and received raises and excellent evaluations.

11.     Plaintiff is a fifty-one (51) year-old female.

12.     Plaintiff represented Zona Rosa to the community by serving on several Boards of Directors, including serving as the chairwoman of the Northland Regional Chamber of Commerce, the Northland Salvation Army Advisory Council, Hillcrest Platte County, and the Platte County Economic Development Council.

13.     Additionally, Plaintiff's work has been recognized locally, nationally, and internationally.  The International Council of Shopping Centers has rewarded her work with ten MAXI awards, nine of which recognized her work with Defendants.

14.     In addition to her many job duties, Plaintiff was responsible for attracting vendors, companies, and events to Zona Rosa in an effort to attract the public to shop at and experience Zona Rosa Town Center.

Electronically Filed - Jackson - Kansas City - January 28, 2019 - 04:56 PM

15.     One such event was Vintage Market Days, a vintage-inspired indoor/outdoor market at which vendors sell various handmade treasures, home décor, outdoor furnishings, and other items.

16.     While Vintage Market Days occurred on only two weekends in 2017 and was not a permanent occupant of Zona Rosa, Plaintiff's motivation in bringing the Vintage Market to Zona Rosa was to create buzz, increase the property's normal traffic and revenue, and expand the clientele of Zona Rosa.

17.     Zona Rosa's first Vintage Market Days was held from March 16-18, 2017.  Due to the success of this event, a second Vintage Market Days was scheduled for the Fall of 2017.

18.     In or around June of 2017, Hillcrest Platte County, a non-profit organization for which Plaintiff was a board member, approached Plaintiff to ask her if she would create a piece of reconditioned furniture for its annual charity auction.  Plaintiff refurbished a bench and donated the bench on behalf of Zona Rosa at the Hillcrest Gala charity auction on October 7, 2017.  The interest in Plaintiff's refurbished furniture combined with the success of Zona Rosa's first Vintage Market Days sparked the idea for Plaintiff to refurbish more furniture and rent a booth at Zona Rosa's Vintage Market in the Fall of 2017.

19.     Plaintiff and a co-worker, a male manager, participated in Zona Rosa's Vintage Market Days from September 29, 2017 through October 1, 2017 selling the furniture and items they created outside of their employment and off of Defendants' premises.

20.     Plaintiff and the male co-worker paid for the booth rental fee with personal funds and took approved personal time off from work to participate in the event.

21.     Plaintiff was never told that she could not participate in the event, either before the event or in the nearly five months that followed it before her termination.  In fact, Plaintiff's

4

direct supervisor approved her personal time off to participate in Vintage Market Days.

22.     A corporate employee of Defendants was aware that Plaintiff was participating in the event and visited Plaintiff at her booth during the event.

23.     The two Vintage Market Days held at Zona Rosa in 2017 generated approximately $20,000 for the property and attracted an estimated 15,000 visitors to Zona Rosa per event.

24.     Throughout Plaintiff's employment with Defendants, Plaintiff was trusted with collecting funds from Zona Rosa's parking meters and parking ticket fines and distributing them to various charities in the Kansas City Metro.

25.     Zona Rosa utilized about 250 parking meters for on-street parking, and the language on the meters represents to the public that all funds collected were to be sent to charity.

26.     In fact, the parking tickets given to vehicles with expired meters states, "Your change helps fund Zona Rosa Connect, which brings the community together by supporting the community at large, non-profit organizations, schools and more.  Each time you put quarters in a meter or make a ticket payment, you're helping to benefit the community in which you live, work and play."

27.     Multiple news outlets, in print and television, have informed the public that all proceeds from the parking meters and tickets at Zona Rosa are donated to charity.

28.     On January 30, 2018, Defendants' Corporate Treasurer reminded Plaintiff of "the property's cash flow issues" and instructed Plaintiff to "figure out a way" to use the parking meters funds towards operating costs instead of distributing the funds to charities as posted on Defendants' parking meters.  This directive, if carried out, would have been a violation of Missouri law and public policies.

5

29.     During this January 30, 2018 conversation, Plaintiff reported to Defendants' Corporate Treasurer that the directive was unethical and immoral and she refused to carry out this illegal directive.  The Treasurer then abruptly ended the telephone conversation.

30.     On February 5, 2018, the morning of her termination, Plaintiff was called again by the Executive Vice President of Finance regarding the charitable parking meter funds. Plaintiff also reported to him that the directive to use these funds for corporate operating costs rather than charitable donations was illegal and again refused to participate with taking the money from the charitable account to assist with the property's cash flow issues.

31.     Following her report of and refusal to violate Missouri law and public policy, Plaintiff was terminated on February 5, 2018.  Defendants stated that Plaintiff was terminated purportedly for her participation in Vintage Market Days, nearly five months after the event.

32.     Plaintiff's co-worker, the male manager, was not terminated or disciplined in any way for participating in Vintage Market Days, and on information and belief, was told he could participate in future Vintage Market Days as long his participation did not occur during work hours.

33.     On information and belief, younger and/or male employees, and/or employees who had not made protected complaints of discrimination and retaliation, or participated in any investigation concerning possible discrimination or retaliation, and/or employees who had not made complaints of serious violations of Missouri law and public policy were retained and/or assumed some or all of Plaintiff's duties after she was terminated.

34.     Plaintiff experienced a broad-based pattern and practice of discrimination and retaliation in the form of adverse employment decisions based on age and/or sex and/or in retaliation against older and/or female employees who are similarly situated to Plaintiff.

6

35.     Plaintiff expressed her objections to this illegal and discriminatory treatment by Defendants, however, she continued to be subjected to discriminatory treatment in the form of a hostile work environment, hostile, biased and discriminatory statements and actions, wrongful elimination of duties, and ultimately her wrongful termination without any legitimate, non-pretextual reason.

36.     The true reasons for the illegal actions against Plaintiff in the terms and conditions of her employment, as described above, were illegal age and/or sex discrimination, and/or retaliation for Plaintiff's complaints of serious violations of Missouri law and public policy and/or refusal to carry out illegal directives.

37.     Since her termination, Defendants have continued to discriminate and retaliate against Plaintiff.

38.     Defendants continued their discrimination and retaliation against Plaintiff by contesting her application for unemployment benefits which were initially denied because Defendants claimed that Plaintiff was terminated for misconduct.

39.     During her appeal of the deputy's denial of benefits, Plaintiff participated in two telephonic hearings in Jackson County, Missouri.  The first of which occurred on April 9, 2018 and its continuation on April 26, 2018.

40.     The Appeals Tribunal reversed the deputy's denial of benefits and awarded Plaintiff unemployment benefits.

41.     On May 30, 2018, Defendants further discriminated and retaliated against Plaintiff by appealing this decision which was quickly affirmed by the Labor and Industrial Relations Commission.

42.     The true reasons for Defendants' actions are discrimination, harassment, intimidation, and continued retaliation for Plaintiff's opposition to Defendants' unlawful employment actions, including but not limited to her refusal to carry out an illegal directive.

43.     The illegal actions set forth above and herein were caused, aided, abetted, directed, incited, compelled, and/or coerced by Defendants due to age and/or gender discrimination and/or in retaliation for Plaintiff's complaints of illegal treatment and her refusal to carry out an illegal directive.

44.     Defendants' actions constitute illegal age and/or sex discrimination and/or retaliation against Plaintiff in the terms and conditions of her employment in violation of the MHRA, Missouri public policy, Missouri Whistleblowers Protection Act, and/or other violations of Missouri common law.

45.     On or about May 3, 2018, Plaintiff timely filed a charge of age and sex discrimination and retaliation against Defendants with the Missouri Commission on Human Rights ("MCHR").  (Attached as **Exhibit A**).

46.     On or about October 31, 2018, the MCHR issued its Notice of Right to Sue to Plaintiff.  (Attached as **Exhibit B**).

47.     This lawsuit was filed within 90 days of the MCHR's issuance of its Notice of Right to Sue to Plaintiff.

48.     The charge of discrimination attached as Exhibit A provided the MCHR sufficient opportunity to investigate the full scope of the controversy between the parties and, accordingly, the sweep of this MHRA judicial complaint may be and is as broad as the scope of the MHRA investigation which could reasonably be expected to have grown out of the charge.

8

49.     Plaintiff has met all deadlines and has satisfied all procedural, administrative, and judicial prerequisites to filing suit.

<u>COUNT I –DISCRIMINATION</u>
**(Against all Defendants)**

50.     Plaintiff incorporates by reference the allegations of paragraphs 1 through 49 above.

51.     Plaintiff's age and/or sex was or were motivating and/or contributing factor(s) in Defendants' intentional decision to discriminate against her in the terms and conditions of her employment as set forth above, including, but not limited to, by subjecting Plaintiff to discriminatory treatment in the form of a hostile work environment, including hostile, biased and discriminatory statements and actions, and ultimately her wrongful termination and falsely contesting her unemployment benefits without any legitimate reason and by refusing to address Plaintiff's complaints about discrimination, and terminating her employment with Defendants for false alleged reasons.

52.     The true reasons for the illegal actions against Plaintiff in the terms and conditions of her employment, as described above, were illegal age, and/or sex discrimination, and/or retaliation.

53.     Defendants knew, or should have known, of the illegal discrimination against Plaintiff and other similarly-situated employees.

54.     Defendants failed to take prompt and appropriate corrective action to end the discrimination against Plaintiff and other similarly-situated employees.

55.     Defendants failed to make good faith efforts to enforce their policies to prevent discrimination against their employees, including Plaintiff.

9

56.     Defendants discriminated against Plaintiff in the terms and conditions of her employment because of her age, and/or sex as set forth above, including by taking no appropriate action to remedy its illegal conduct and by terminating her employment for false alleged reasons.

57.     As a direct and proximate result of Defendants' illegal discriminatory actions, Plaintiff has sustained damages in the form of lost wages, lost fringe benefits, loss of earning capacity, loss of career opportunity, costs of seeking alternate income, pain and suffering, mental anguish, loss of enjoyment of life, humiliation, upset and other emotional distress, damage to her reputation, diminished job opportunities, and in other respects, all in an amount yet to be determined.

58.     Defendants' conduct was willful, wanton and malicious, and showed complete indifference to or conscious disregard of the rights of Plaintiff under the MHRA, thus justifying an award of punitive damages in an amount sufficient to punish Defendants and to deter them from like conduct in the future.

59.     Plaintiff has already incurred and will incur in the future substantial attorneys' fees and expenses in prosecuting this action, and such fees and expenses are recoverable from Defendants under the MHRA.

WHEREFORE, Plaintiff prays for judgment in her favor and against Defendants, jointly and severally, on Count I, and requests an award of her actual damages, in an amount in excess of Twenty-Five Thousand Dollars ($25,000.00), including but not limited to her lost wages and benefits, with interest through the date of trial, damages for emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, harm to reputation, loss of self-esteem, humiliation and other nonpecuniary losses, damages for future loss of wages and benefits, punitive damages, all costs including reasonable attorneys' fees, equitable relief as appropriate,

including but not limited to front pay, an injunction restraining Defendants from future discriminatory actions, and any such other relief as the Court deems just and proper.

**COUNT II – MHRA RETALIATION**
**(Against all Defendants)**

60. Plaintiff incorporates by reference the allegations of paragraphs 1 through 59 above.

61. Plaintiff had a good faith, reasonable belief that Defendants were engaging in unlawful employment practices, including violations of laws prohibiting discrimination and retaliation, she participated in an investigation concerning possible discrimination or retaliation, and she reported her concern and opposition to these unlawful practices to Defendants, including by filing a charge of discrimination and retaliation.

62. Defendants retaliated against Plaintiff in the terms and conditions of her employment because of her participation in an investigation of possible discrimination or retaliation and her report of and/or opposition to unlawful employment practices, including but not limited to, by taking no appropriate action to remedy the illegal conduct and by terminating Plaintiff's employment for false alleged reasons in favor of a younger and/or male individual and/or an individual who did not make protected complaints, and by falsely contesting her application for unemployment benefits.

63. Plaintiff expressed her objections to this illegal and discriminatory treatment by Defendants; however, she continued to be subjected to retaliatory and discriminatory treatment in the form of hostile, biased, and discriminatory statements and actions, and ultimately her wrongful termination without any legitimate reason.

64. Plaintiff's opposition to Defendants' unlawful employment practices was a motivating and/or contributing factor in Defendants' decision to retaliate against her in the terms

11

and conditions of her employment as set forth above, including but not limited to her wrongful termination.

65.     Defendants continued to retaliate against Plaintiff after her termination by contesting her unemployment benefits.

66.     The illegal actions set forth above and herein were caused, aided, abetted, directed, incited, compelled, and/or coerced by Defendants due to age and/or gender discrimination and/or in retaliation for Plaintiff's complaints of illegal treatment.

67.     As a direct and proximate result of Defendants' illegal retaliatory actions, Plaintiff has sustained damages in the form of lost wages, lost fringe benefits, loss of earning capacity, loss of career opportunity, costs of seeking alternate income, pain and suffering, mental anguish, loss of enjoyment of life, humiliation, upset and other emotional distress, damage to her reputation, diminished job opportunities, and in other respects, all in an amount yet to be determined.

68.     Defendants failed to make good faith efforts to enforce their policies to prevent harassment, discrimination, and retaliation against their employees, including Plaintiff.

69.     Defendants' conduct was willful, wanton and malicious, and showed complete indifference to or conscious disregard of the rights of Plaintiff under the MHRA, thus justifying an award of punitive damages in an amount sufficient to punish Defendants and to deter them from like conduct in the future.

70.     Plaintiff has already incurred and will incur in the future substantial attorneys' fees and expenses in prosecuting this action, and such fees and expenses are recoverable from Defendants under the MHRA.

WHEREFORE, Plaintiff prays for judgment in her favor and against Defendants, jointly

Electronically Filed - Jackson - Kansas City - January 28, 2019 - 04:56 PM

and severally, on Count II, and requests an award of her actual damages, in an amount in excess of Twenty-Five Thousand Dollars ($25,000.00), including but not limited to her lost wages and benefits, with interest through the date of trial, damages for emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, harm to reputation, loss of self-esteem, humiliation and other nonpecuniary losses, damages for future loss of wages and benefits, punitive damages, all costs including reasonable attorneys' fees, equitable relief as appropriate, including but not limited to front pay and an injunction restraining Defendants from future discriminatory and retaliatory actions, and any such other relief as the Court deems just and proper.

### COUNT III – RETALIATION IN VIOLATION OF THE MISSOURI WHISTLEBLOWING PROTECTION ACT
#### (Against All Defendants)

71.    Plaintiff incorporates by reference the allegations of paragraphs 1 through 70 above.

72.    Plaintiff had a good faith, reasonable belief that Defendants were engaging in practices that violated Missouri law and/or public policy by instructing her to "figure out a way" to use the accumulated and future proceeds from the property's charitable parking meters and ticket fines for operating costs instead of distributing the funds to charities as posted on the meters and as had been done during Plaintiff's tenure with Defendants.

73.    Plaintiff did not agree with the actions of Defendants, including what she believed, and had a good faith basis to believe, were serious violations of Missouri law and public policy.

13

74.     Additionally, the morning of Plaintiff's termination on February 5, 2018, Plaintiff again reported and objected to the directive to find ways to use the meter funds to cover operating funds and refused to carry out the directive.

75.     Had Plaintiff carried out this directive, she would have violated, among other Missouri laws and public policies, RSMo. §§ 407.020.1, 3.

76.     Plaintiff is a "protected person" under Missouri law because she is an employee of an employer who has reported to the proper authorities an unlawful act of her employer; an employee of an employer who reported to her employer serious misconduct of the employer that violates a clear mandate of public policy as articulated in a constitutional provision, statute, or regulation promulgated under statute; and/or an employee of an employer who has refused to carry out a directive issued by her employer that if completed would be a violation of law.

77.     Defendants wrongfully terminated and retaliated against Plaintiff for truthfully and in good faith refusing to misappropriate the parking meter funds to cover costs for operating the business.

78.     Defendants retaliated against Plaintiff in the terms and conditions of her employment because of her opposition to its violations of law and public policy, including but not limited to, by terminating her employment for false alleged reasons.

79.     Defendants continued to retaliate against Plaintiff after her termination by falsely contesting her unemployment benefits multiple times.

80.     Plaintiff's opposition was a contributing and/or motivating factor in Defendants' decision to retaliate against her in the terms and conditions of her employment as well as their continued retaliation subsequent to her termination.

14

81.     As a direct and proximate result of Defendants' illegal retaliation and her wrongful termination, Plaintiff has sustained damages and is entitled to recover compensation for past and future lost wages, lost fringe benefits, loss of earning capacity, loss of career opportunity, costs of seeking alternate income, pain and suffering, mental anguish, emotional distress, loss of enjoyment of life, humiliation, upset and other emotional distress, damage to her reputation, diminished job opportunities, and in other respects, all in an amount yet to be determined.

82.     Defendants' disparate and retaliatory treatment of Plaintiff in the terms and conditions of her employment was intentional, willful, and malicious and done pursuant to Defendants' policy, custom, or business practice designed and intended to punish her for asserting her rights and reporting practices that were not compliant with Missouri law and public policy, and was intended to discourage other employees from doing the same in the future, all in willful and conscious disregard of Plaintiff's rights under the law, thus justifying an award of punitive and liquidated damages in an amount sufficient to punish Defendants and to deter it from like conduct in the future.

83.     Plaintiff has already incurred and will incur in the future substantial attorney's fees and expenses in prosecuting this action.

WHEREFORE, Plaintiff prays for judgment in her favor and against Defendants, jointly and severally, on Count III, and requests an award of her actual damages as is fair and reasonable, in an amount in excess of Twenty-Five Thousand Dollars ($25,000.00), including but not limited to her lost wages and benefits, with interest through the date of trial, damages for emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, harm to reputation, loss of self-esteem, humiliation and other nonpecuniary losses, damages for future

15

loss of wages and benefits, punitive damages, liquidated damages, and all costs including reasonable attorneys' fees, pre-judgment and post-judgment interest, equitable relief as appropriate, including but not limited to front pay and an injunction restraining the Defendants from future illegal actions, and any such other relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury in the Circuit Court of Jackson County, Missouri at Kansas City on all counts and allegations in this Petition.

Respectfully submitted,

**SIRO SMITH DICKSON PC**

By  /s/ Athena M. Dickson
    Rik N. Siro               MO #33908
    Eric W. Smith           MO #47108
    Athena M. Dickson     MO #55104
    Raymond A. Dake      MO #62829
    Ryan P. McEnaney     MO #70235
    1621 Baltimore Avenue
    Kansas City, Missouri  64108
    816.471.4881 (Tel)
    816.471.4883 (Fax)
    rsiro@sirosmithdickson.com (email)
    esmith@sirosmithdickson.com (email)
    adickson@sirosmithdickson.com (email)
    rdake@sirosmithdickson.com (email)
    rmcenaney@sirosmithdickson.com (email)

**ATTORNEYS FOR PLAINTIFF**

16

Electronically Filed - Jackson - Kansas City - January 28, 2019 - 04:56 PM

**191**

EXHIBIT

A

## CHARGE OF DISCRIMINATION

RECEIVED EEOC
KANSAS CITY AREA OFFICE

This form is affected by the Privacy Act of 1974; See Privacy Act Statement before completing this form.

2018 MAY -3 PM 12:48

| AGENCYCHARGE NUMBER | |
|---|---|
| ☐ FEPA | |
| X EEOC | 563-2018-01825 |

MISSOURI COMMISSION ON HUMAN RIGHTS and EEOC
*State or local Agency, if any*

| NAME *(Indicate Mr., Ms., Mrs.)* | HOME TELEPHONE *(Include Area Code)* |
|---|---|
| Ms. Rosemary A. Salerno | 816-413-8987 |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | DATE OF BIRTH |
|---|---|---|
| 6704 N. Charleston Drive, Kansas City, Missouri 64119 | | |

NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICESHIP COMMITTEE, STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME *(If more than one list below.)*

| NAME | NUMBER OF EMPLOYEES, MEMBERS | TELEPHONE *(Include Area Code)* |
|---|---|---|
| Zona Rosa, Olshan Properties, MPI Management, LLC | 500+ | 212-935-1330 |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | COUNTY |
|---|---|---|
| 600 Madison Avenue, 14th Floor, New York, NY 10022 | | New York |

CAUSE OF DISCRIMINATION BASED ON *(Check appropriate box(es))*

☐ RACE  ☐ COLOR  **X** SEX  ☐ RELIGION  ☐ NATIONAL ORIGIN

**X** RETALIATION  **X** AGE  ☐ DISABILITY  **X** OTHER: **Public Policy Violation**

| DATE DISCRIMINATION TOOK PLACE |
|---|
| **February 5, 2018** |
| **X** CONTINUING ACTION |

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

I am a 50-year-old female. I was employed by Zona Rosa, Olshan Properties (Olshan), and MPI Management, LLC as the General Manager of Zona Rosa Town Center (Zona Rosa) from 2004 until my wrongful termination on February 5, 2018. Throughout my employment, I have performed all duties of my position as required, exceeded the expectations of my position, and received praise, raises, bonuses, numerous industry awards, and excellent evaluations for my work. I was a successful and valued employee of Olshan et al. until I was terminated illegally due to age and/or sex discrimination and retaliation for my refusal to carry out a directive issued by my employer that if completed would have been a violation of law.

Olshan terminated me on February 5, 2018. The stated reasons were my participation in Vintage Market Days and "other poor management decisions"; however, Olshan provided no examples of these decisions. Olshan's stated reasons for my termination are pretextual. Vintage Market Days is a three-day event held several times a year in various communities; it was held twice in 2017 at Zona Rosa. Vintage Market paid Zona Rosa $20,000 annually to rent space. In September of 2017, I ran a booth with fellow Zona Rosa/Olshan employee, Todd Sharbono, in the Vintage Market to sell hand-made furniture. We paid the $400 booth fee to Vintage Market and I took Paid Time Off (PTO) to participate. This PTO was approved by my direct supervisor, Stephen Barnhouse, and all of my participation in the Vintage Market occurred outside of working hours. I was never told that participating in the Market was an issue or a concern; in fact, a corporate Olshan employee was aware of my participation and attended the Market herself. Additionally, Olshan's "conflict of interest" policy states that I may not have a "financial interest" in any organization, including vendors, that does business with Olshan. I did not have a financial interest in Vintage Market Days. My participation the Vintage Market was not financially detrimental to Olshan in any way; in fact, it could only have been beneficial by attracting more customers to the property and bringing revenue to the center.

Despite participation in Vintage Market Days being the purported reason for my termination, Mr. Sharbono, a male employee, was not terminated or disciplined in any way. In fact, on information and belief, Mr. Sharbono was told he could participate in future Vintage Market Days. Neither Mr. Barnhouse, the Olshan corporate employee who attended the Market, nor anyone else, ever gave any indication at the time (back in September 2017), or at any time in the five months that followed leading up to my termination, that my participation was a violation of any policy.

Moreover, Zona Rosa collects money from 270 parking meters on the property, the proceeds of which, including $5.00 parking ticket fees, are distributed to various charities in the Kansas City area. Each meter posts a printed notice informing the Zona Rosa patron of this fact. Additionally, Kansas City's Fox4 News ran a story on November 28, 2017 about the meters informing the public that <u>all</u> proceeds, over $2,000,000 over 14 years, are distributed to over 300 charities in the community. On, January 30, 2018 (four business days before my termination), Olshan's corporate treasurer, Faye Strobel, called and directed me to "figure out a way to" begin using the accumulated and future proceeds from the meters to pay Zona Rosa's operating costs, since, she stated, "you are aware of the property's cash flow issues". I informed her that this directive was immoral and unethical and that I didn't want to know anything about it if that was something Olshan was planning to do. I told her that I had to face our community partners, and that the money was given by our customers with the intent that it benefit local non-profits. She hung up the phone on me. I also informed Olshan Executive Vice President of Finance, Wayne Chang, about this directive again saying that I thought it was immoral and unethical and he replied that "we are trying to get our arms around that." I refused to perform this illegal directive. This conversation with Wayne Chang took place the morning of my termination.

The true reasons for the illegal actions against me, including but not limited to my termination, were illegal age and sex discrimination, and retaliation for refusing to carry out an illegal directive issued by my employer. I am seeking all legal and equitable remedies available to me, including but not limited to, compensation for my lost wages and benefits, compensatory damages for my emotional pain and suffering, damage to my reputation, reinstatement to the Zona Rosa General Manager position and/front pay and benefits, punitive damages, and my costs and attorneys' fees in this

matter.  The above is only a summary of the facts in support of my charge of discrimination and retaliation.  I will cooperate fully with the Commission and all other state or federal agencies in providing further information in support of my complaints.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or telephone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY - (When necessary for State and Local Requirements) |
|---|---|
| | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. |
| I declare under penalty of perjury that the foregoing is true and correct. | SIGNATURE OF COMPLAINANT |
| | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (Day, month, and year) |
| Date 05·03·12  Charging Party (Signature) | |

Electronically Filed - Jackson - Kansas City - January 28, 2019 - 04:56 PM

Electronically Filed - Jackson - Kansas City - January 28, 2019 - 04:56 PM



**MISSOURI DEPARTMENT OF LABOR AND INDUSTRIAL RELATIONS**
# MISSOURI COMMISSION ON HUMAN RIGHTS

| | | | |
|---|---|---|---|
| MICHAEL L. PARSON<br>GOVERNOR | ANNA S. HUI<br>DEPARTMENT DIRECTOR | MELODY A. SMITH, ED.D.<br>ACTING COMMISSION CHAIR | ALISA WARREN, PH.D.<br>EXECUTIVE DIRECTOR |

October 31, 2018



**EXHIBIT**

**B**

FE-5/18-29003
Administrative Use/Records

Rosemary Salerno
6704 N. Charleston Drive
Kansas City, MO  64119

RE:   Salerno vs. Zona Rosa, Olshan Properties, MPI Mgmt, LLC
        FE-5/18-29003     563-2018-01825

The Missouri Commission on Human Rights (MCHR) is terminating its proceedings and issuing this notice of your right to sue under the Missouri Human Rights Act because you have requested a notice of your right to sue.

This letter indicates your right to bring a civil action within 90 days of this notice against the respondent(s) named in the complaint. Such an action may be brought in any circuit court in any county in which the unlawful discriminatory practice is alleged to have occurred but it must be brought no later than two years after the alleged cause occurred or its reasonable discovery. Upon issuance of this notice, the MCHR is terminating all proceedings relating to the complaint. No person may file or reinstate a complaint with the MCHR after the issuance of a notice of right to sue relating to the same practice or act. You are hereby notified of your right to sue the Respondent(s) named in your complaint in state circuit court. **THIS MUST BE DONE WITHIN 90 DAYS OF THE DATE OF THIS NOTICE OR YOUR RIGHT TO SUE IS LOST**.

You are also notified that the Executive Director is hereby administratively closing this case and terminating all MCHR proceedings relating to it. This notice of right to sue has no effect on the suit-filing period for any federal claims. This notice of right to sue is being issued as required by Section 213.111.1, RSMo, because it has been over 180 days after the filing of this complaint and MCHR has not completed its administrative processing.

(continued on next page)

| ☐ | ☐ | ☐ | ☒ | ☐ |
|---|---|---|---|---|
| 3315 W. TRUMAN BLVD.<br>P.O. BOX 1129<br>JEFFERSON CITY, MO 65102-1129<br>PHONE: 573-751-3325<br>FAX: 573-751-2905 | 111 N. 7TH STREET, SUITE 903<br>ST. LOUIS, MO 63101-2100<br>PHONE: 314-340-7590<br>FAX: 314-340-7238 | P.O. BOX 1300<br>OZARK, MO 65721-1300<br>FAX: 417-485-6024 | 1410 GENESSEE, SUITE 260<br>KANSAS CITY, MO 64102<br>FAX: 816-889-3582 | 106 ARTHUR STREET<br>SUITE D<br>SIKESTON, MO 63801-5454<br>FAX: 573-472-5321 |

*Missouri Commission on Human Rights is an equal opportunity employer/program. Auxiliary aides and services are available upon request to individuals with disabilities.*
TDD/TTY:    1-800-735-2966 (TDD)     Relay Missouri: 711
www.labor.mo.gov/mohumanrights     E-Mail: mchr@labor.mo.gov

Electronically Filed - Jackson - Kansas City - January 28, 2019 - 04:56 PM

RE:   Salerno vs. Zona Rosa, Olshan Properties, MPI Mgmt, LLC
      FE-5/18-29003    563-2018-01825

In addition to the process described above, if any party is aggrieved by this decision of the MCHR, that party may appeal the decision by filing a petition under § 536.150 of the Revised Statutes of Missouri in state circuit court.  Any such petition must be filed in the circuit court of Cole County.

Respectfully,

Alisa Warren, Ph.D.
Executive Director


Zona Rosa, Olshan Properties, MPI Mgmt, LLC
600 Madison Ave., 14th Floor
New York, NY  10022


Janetta Tischer
Olshan Properties
600 Madison Ave., 14th Floor
New York, NY  10022


Athena Dickson
1621 Baltimore Ave.
Kansas City, MO 64108
*Via email*

3315 W. TRUMAN BLVD.     111 N. 7TH STREET, SUITE 903     P.O. BOX 1300     1410 GENESSEE, SUITE 260     106 ARTHUR STREET
P.O. BOX 1129     ST. LOUIS, MO 63101-2100     OZARK, MO 65721-1300     KANSAS CITY, MO 64102     SUITE D
JEFFERSON CITY, MO 65102-1129     PHONE: 314-340-7590     FAX: 417-485-6024     FAX: 816-889-3582     SIKESTON, MO 63801-5454
PHONE: 573-751-3325     FAX: 314-340-7238     FAX: 573-472-5321
FAX: 573-751-2905
*Missouri Commission on Human Rights is an equal opportunity employer/program. Auxiliary aides and services are available upon request to individuals with disabilities.*
TDD/TTY:    1-800-735-2966 (TDD)    Relay Missouri: 711
www.labor.mo.gov/mohumanrights     E-Mail: mchr@labor.mo.gov

Case 4:19-cv-00145-BP   Document 1-1   Filed 02/26/19   Page 21 of 21